Good morning. Eric Fish, appearing for Mr. Kurashev. I was going to take eight minutes for my initial argument and reserve four for my colleague, Mr. Chin. He'll be handling the argument that the Assad regime was not a government, and then I'd like to reserve three minutes for rebuttal. So, Mr. Kurashev's case should be sent back for resentencing. Mr. Kurashev received a 12-year sentence for attempting to send $13,000 to an entity that, at the time, was a designated foreign terrorist organization. That sentence was based on a 12-point super enhancement that brought his guidelines from 57 to 71 months to 30 years to life. To be clear, attempting to send money to HTS does make one guilty of material support, and sending money knowing or having reason to believe that it will be used for weapons makes the medium enhancement appropriate, which we don't contest on appeal. But to find the super enhancement, the district court needed to find specific intent. The super enhancement requires that the crime be calculated, that is, the sending of money, be calculated to intimidate, coerce, or retaliate against government conduct. And in applying this super enhancement, the sentencing judge stated an incorrect legal standard, made inadequate factual findings, and did not sufficiently explain the reasons for the enhancement. So starting first with the legal standard, the judge at sentencing stated during the argument that the defense's argument concerning specific intent hinges on the judge accepting Mr. Kurashev's primary motivation was supporting journalistic efforts. The judge also repeats that in the statement of reasons for the sentence. That is not a correct statement of the law. The law requires that the enhancement only applies where the money is provided with the specific intent to retaliate against, intimidate, or coerce a foreign government. Based on that legal error, this court should apply de novo review and send the case back for resentencing. In addition, the government argued at sentencing, and the judge seemed to accept, and the government continues to argue on appeal, that simply sending the money to HTS, knowing what HTS was doing, being aware of its activities, was sufficient to apply the enhancement. But this enhancement focuses on the specific intent of the crime. So just to understand what your position is here, suppose the defendant had said, and everyone agrees that this was truthful, my intent in sending this money is to support combat operations by HTS against the Assad government. Setting aside whether the Assad government is a government, would that be sufficient for this enhancement? It could be, Your Honor. We would also need a finding as to which conduct was being retaliated against, intimidated, or coerced. So some examples of sort of heartland cases for this type of enhancement. United States v. Al Owemer, this is from the Third Circuit. The enhancement was appropriately found for attempts to materially support a terrorist group where the defendant plotted to bomb a church in retaliation against the Nigerian government's conduct in killing members of the terrorist group. So there you have retaliation. You have specific intent. That is, the attempted material support is for specific retaliation. And you have conduct. Okay, so then let me vary the hypothetical a little bit. Suppose he said, this money is intended to support combat operations against the Assad regime because I want them overthrown because of their human rights abuses against people in Syria. I think that would be sufficient, Your Honor. Okay. If the specific intent was oriented towards particular conduct and retaliatory, yes. And why is the, I mean, given the deference that we have to apply to the district court's factual findings, why isn't the evidence sufficient to allow the court to have inferred that that was essentially what he had in mind? Well, Your Honor, as this court instructed in the al-Haggagi case, the key question is not, the focus is not on the offender, it is on the offense. The key question is, was the provision of the dollars calculated to achieve the particular objective specified in the statute? And in this case, as in al-Haggagi, we have the record reflect statements communicated between the defendant and the person that he's sending money to that he does not know what the money is being used for. I'm giving it to you. You tell me what the, you decide what it's for. There's also a statement from Mr. Fezimatov, the kind of HTS intermediary, that the money is going to be used for journalistic efforts, for the Umm al-Aif program. Those statements are focused on the provision of the dollars themselves. Now, there are other statements. Right. There are other statements. Yes, of course. There are other statements that the government will no doubt emphasize. Yeah, we're going to use the assets to carry out jihad. And he says, you know, yes, I'm trying to act with that intent. We have the evidence that he was looking up information about, like, the helmets and sort of tactical gear. So couldn't the district court infer from that an intent to have at least some of the money, maybe not all of it, but some of it, used for combat operations? So, Your Honor, just as in al-Haggagi, the general sort of beliefs of the defendant and the defendant's general support for the activities of the designated terrorist organization aren't enough to support application of the enhancement to the crime. The question is whether, in providing the dollars, the defendant had the union of act and intent. That is, whether the actual provision of money was calculated for a particular purpose. Right, but we don't need him to put it in the memo line on the check. We can infer the intent from the surrounding circumstances. Right, and what I'm saying is, like, why don't the statements that I just pointed to allow the district court, maybe not require the district court, but allow the district court to draw that inference? Well, so as in al-Haggagi, so in al-Haggagi, there were also statements in support of ISIS. In al-Haggagi, there was also sort of engagement with online extremist material. This court in al-Haggagi specifically instructed that the focus is not on the defendant but on the offense. Right, and this court in al-Haggagi found it decisive, or at least very important to the result, that Mr. al-Haggagi didn't know how the social media accounts were going to be used, that he had simply created e-mail accounts and social media accounts for ISIS members without knowing what kind of media campaign it was going to be used for. Similar statements here, similar communications here between Mr. Kuryshev and the intermediary, that he does not know what you're going to use it for. You asked me for it. I'm providing it to you. I think those statements are the only kind of relevant ones as this court has provided in al-Haggagi. There's some statements in al-Haggagi that seems confusing to me in terms of applying the law here as it's set for, because statements in al-Haggagi that says you don't look at motivation, but you're supposed to look at specific, you do, it requires specific intent. Having trouble dissecting motivation from specific intent for the reasons that Judge Miller has said in terms of, we have all these statements where he's, I think we can, somebody could draw inference like the district court did, that in donating the money, what was the purpose? It was to promote HTS's war efforts, right? And therefore, I guess, coerce or influence the Syrian government. I'm trying to figure out why that isn't enough, because I do see in places where al-Haggagi also says it has to be a direct connection to the, I guess, adverse effects on the government in question here, which would be the Syrian government. And so I'm just trying to figure out how to do that in light of the statements here, a lot of the references to the Syrian government, how sure, how tight it has to be in terms of the direct correlation or connection. So in al-Haggagi, this court focused on statements made in connection with the provision of the social media accounts, that is with the creation of the email accounts and the social media accounts. This court discounted and kind of downplayed other statements, other background evidence of engagement with extremism, other statements that Mr. al-Haggagi supported ISIS, supported a caliphate, et cetera. I think the court should do the same here. So in this case, there are statements directly connected to the sending of the dollars that indicate that Mr. Khrushchev does not know what they will be used for, has no preference about what they will be used for. As the court stated at sentencing, and it's brief, there are multiple different purposes, some of which that HTS could have put the money towards, some of which involve providing funds for humanitarian aid, some of which involve media work, purchasing cameras, et cetera, and some of which potentially involve purchasing weapons. The defendant does not know what purpose his money is going to, has no particular intent with respect to that purpose. And so I think the distinction drawn in al-Haggagi between sort of the defendant's broader background beliefs and larger support of the designated terrorist organization are distinguished from the evidence of the specific purpose the defendant has in committing the crime, which in this case is the provision of funds. You said he doesn't know what the funds are being used for, but Fezimatov told him, you are using your assets to carry out jihad. Doesn't that mean that he knew that that's what the money was being used for? So that is sort of a general statement of, you know, support for the kind of side of HTS in this conflict. Certainly, you know, as most, as did the U.S. government, you know, Mr. al-Haggagi did not like the Assad regime, but the statements that I think are kind of most relevant under al-Haggagi are the ones specifically connected to the provision of funds. That is that for no particular purpose doesn't know what they're being sent for. And in addition, you know, so we're not contesting the medium enhancement, right? It's not sufficient that Mr. Khrushchev has reason to believe that the funds could be used for weapons. What we need is a finding of specific intent that Mr. Khrushchev wants the funds to be used to intimidate, coerce, or retaliate against a government. And in addition, I do want to get to sort of our third issue, which is that this court should even sort of all of these, this discussion aside, remand for a lack of adequate explanation of the sentence. In the cases we cited, Arsila Ramirez, and in the Fourth Circuit case, United States v. Chandia, appellate courts reversed sentences that were enhanced by this enhancement because the district court did not make adequate factual findings about what the specific intent was, what conduct was being retaliated against, coerced, or intimidated. And that's the case here. We don't know which verb the district judge found, whether it was intimidation, coercion, or retaliation. The judge didn't specify. The judge simply stated that Mr. Khrushchev was trying to affect what the Syrian government was doing. We also don't know what conduct. It would be, you know, much easier to argue this case on appeal if we had particular detailed factual findings about how exactly Mr. Khrushchev's conduct, you know, matches the enhancement. Did you object in the district court that the explanation of the sentence or the explanation of the enhancement was inadequate? So there wasn't a point at which after the explanation was given the defense lawyer stood up and said, I object to your explanation. I do think that in this kind of issue that the cases we cite in our brief reflect that appellate courts should give somewhat less deference to district courts' sort of failure to adequately explain the sentence because it limits appellate review. So, you know, irrespective of what standard of review, like formally speaking, you end up applying, I do think for this particular kind of issue where the sentencing, you know, issues were debated extensively, where there was a discussion of what the factors were, and then the district judge imposes the enhancement without adequate explanation, I do think that that should be given somewhat more searching review than an ordinary type of plain error issue. Unless there are further questions, I'll defer to my colleague. Good morning. May it please the Court. Gabriel Chin for Mr. Khrushchev. The Assad regime was not a government for purposes of the 3A, 1.4A super enhancement, and therefore the judgment should be reversed and remanded for resentencing without the enhancement. The relevant facts are remarkable and undisputed. Years before the conduct at issue in this case, the United States derecognized the Assad regime. We withdrew our embassy, expelled Assad's diplomats from this country. We recognized another group as the legitimate representatives of the Syrian people. We made war against the Assad regime through military strikes and funding opposition groups. The U.S.-supported campaign worked, and now the people to whom Mr. Khrushchev contributed are the leaders of Syria. They've met with President Trump, Secretary Rubio, and others. The government cites no cases holding that the rogue Assad regime is a government for purposes of the super enhancement when the issue was raised, and we are aware of none other than the U.S. v. Khan Fifth Circuit decision, which acknowledged the decision but did not rule. You have asked a number of advocates today, Your Honors, for their best case, and I would say our best case is this. The Department of Justice National Security Division has access to every material support of terrorism and related case which has ever been prosecuted, and I was curious, I will admit, whether they would bring forward a list of dozens or hundreds of unpublished decisions or oral rulings that I was unable to find where the enhancement was applied to an unrecognized regime, a cartel, a warlord, ISIS, but they didn't. This is the dog that didn't bark, and there's a reason for that, and that is that the statutes defining government frequently say that it applies to unrecognized regimes. When unrecognized regimes are covered, Congress has so legislated explicitly in all of the definitions that we found in Title 18 based on the canon against surplusage, based on the interpretive canon against absurdity, at least as a matter of lenity, this court should not construe the word government in its widest conceivable meaning. It's not its widest conceivable meaning. I mean, the ordinary language understanding of a government is like the people who are exercising authority over some territory, right? Those could be people who are doing a good job of it, people who are not, people who the United States recognizes, people who the United States don't, but in terms of the ordinary meaning of the word government, I don't think it's restricted to those governments that are recognized as sovereigns by the United States of America, is it? I think, Your Honor, that it means government for purposes of U.S. law. I think MS-13, ISIS, the Sinaloa cartel exercise authority over certain territory to the exclusion of other entities. They have armed forces. They exact taxes under the people under their jurisdiction, but they're not a government, I would submit, for purposes of the super-enhancement. This court and other federal courts use the word church government, government of the union or labor union, student government. Government is used in a wide variety of contexts. This one, I submit, Your Honor, is in the victim enhancement area of the U.S. sentencing guidelines, and therefore I think under the canons of interpretation it's appropriate to say that we're talking about governments that the United States has some interest in protecting. Thank you. Thank you, Your Honor. May it please the Court, Your Honor, Joseph Minto on behalf of the United States. There was no error, plain or otherwise, in Khrushchev's sentencing, and this court should affirm. After a lengthy discussion with the parties, the district court correctly concluded that Khrushchev's own words show that he had the necessary intent to trigger the Section 3A 1.4 enhancement. I'd like to start with the one issue that Khrushchev raised below before turning to his unpreserved issues. On this issue, I wanted to begin by highlighting two exchanges between Khrushchev and Fazimadov, the HTS fundraiser that he sent money to. Judge Miller already recounted one of them where Fazimadov explained that Khrushchev should trust in Allah, knowing he's using his assets to carry out jihad, and Khrushchev's response was, yes, brother, I am trying to act only with this intent. The second exchange, after Fazimadov was complaining about how much money he had needed to spend, Khrushchev's response was, war is an expensive pleasure. I think that these two exchanges explain not only that Khrushchev knew where his money was going, but that he intended the money to be used to further HTS's battle against the Syrian government. Do we know, do we need more direct evidence to directly connect that statement to the Syrian government? I don't know that you do, but here you have it. You can look at paragraph 34 of the PSR where Khrushchev explains his motivations for what he did. But how do we reconcile that with the Al-Hagakhi that says we don't look at his motivations? We have to look at the specific act, which in this case is the money being transferred. I'm really trying to understand this. The money being transferred, that money being transferred has to go toward retaliation or coercion or something toward that government, the subject government, here's the Syrian government. And here we have statements that he made, and I acknowledge the one, using your assets to carry out jihad, which is a statement made by Pazimodov. And his response, I am trying to act with only this intent, but it seems like Pazimodov was more working with HTS or what was, and that's one group that was directly, I guess, or trying to subvert the Syrian government, but they were also doing other things, other governments. And Mr. Pazimodov himself, was a journalist, had other things, and he's giving him the money. And so I'm just wondering in light of not just our case in al-Haggagi, but also what I'm seeing, how the Second Circuit applied this, how the Fourth Circuit applied this. Is this enough? It is enough here, Your Honor. And again, I would point back, paragraph 34 of the PSR is Khrushchev explaining what motivated his offense. It's not these general statements in the time period in which he was sending this money. And he says he did it because he wanted to change what the Syrian government was doing against its people. Now, as my friends on the other side know, there were lots of people that were opposed to what the Syrian government was doing against its own people, but they had different reactions to that. What Khrushchev chose to do was to fund a terrorist organization that was fighting that government, and that's how we know that his funds were met the necessary— Do we know that his funds that he gave to Fazimodov, who then gave to HTS, went to some act against the Syrian government? Do we know that? We don't have that kind of tracing, no. And so that's why I'm wondering, I mean, even by preponderance of the evidence, was there a finding of that? Is there enough of a preponderance of evidence to show that? So this was an attempt charge, Your Honor. We don't have to trace the funds all the way through. We look at what his offense of attempting to provide that money was calculated to do. And here, that offense of giving money to a terrorist organization, knowing that that organization is fighting the Syrian government, and that is what you have chosen as your response to the Syrian government's activities that have deeply offended you and many other people, that together, those three points are sufficient to trigger the enhancement. And I want to emphasize that first point that everybody agrees that Khrushchev was trying to influence the Syrian government here. That was conceded by defense counsel at page 35 of the ER, and it's part of paragraph 34 of the PSR as well. The only dispute was whether he was trying to influence through intimidation, coercion, or in retaliation. And so if we all agree and we start from the premise that he was doing these actions to influence the Syrian government, that also explains the error in his claim that there was some sort of legal error in either the district court's question or the government's arguments. Once you have an expressed intent to alter the Syrian government's activities, if you choose to act on that intent by giving money to an organization that is conducting terrorist activities against that government, that's enough to trigger the enhancement. Well, let's go back a little bit on the weapons, because I think in the sentencing memorandum, you say that Khrushchev intended to provide funds to purchase weapons that were intended to be used in the commission of violent acts against the Syrian army and other opponents of HTS. Do you agree? Is that true? Yes. All right. So it seems like you acknowledge that HTS had opponents other than the Syrian government. That's absolutely true. All right. So maybe I'm not reading this right. But if I'm reading this right, at least one way to read what Al-Ghaghi says, I'm just trying to figure out then how can you connect Khrushchev's transmitted funds, to HTS's specific efforts against the Syrian government? And isn't that what's required here? I don't think that sort of earmarking is what is required. I would point actually to the 11th Circuit decision in Arsila Gomez that they point to, because on remand in that case, the district court made the appropriate findings. And the facts of that case, I think, highlight the way that that problem can be addressed. The defendant there was providing weapons to ELN, which is a terrorist organization in Colombia. They're also a large drug organization. But his primary defense and the reason he said the enhancement didn't apply was he said, this was a commercial transaction. I was mostly looking to get money for giving these guns. And whether they were going to use these guns for their drug-running efforts or for their efforts against the Colombian government, I didn't really care. But the 11th Circuit affirmed the district court's finding on remand that the enhancement was appropriately applied, because the sort of natural result of this conduct, that's what the calculated term I think is best read to mean. And I know you were struggling with what it means to not have a motive but to be calculated to do something. And I think that's the best way that I can think of to explain it, that calculated deals with what is the likely results of your actions versus motive is why you're doing them. And it sets aside this possibility that you could come in and say, I was just doing it to get paid and for the money, if you were also, like we have here, admitting that you were doing it in response to being offended by the Syrian government's conduct. It seems like you, I mean, looking at the Second and the Fourth Circuit, I know you point out the 11th Circuit, like you might need to determine this calculation. You might need more of a plan or more specifics regarding, you know, that. I mean, obviously we say it's for the bomb attack. That's pretty clear. But here I'm just trying to figure out where the evidence is that Khrushchev specifically intended his funds to go to Fozzy Mota, to HTS's military efforts against the Syrian government. You know, that was calculated to achieve that object. Again, I would come back to we know that Khrushchev intended to influence the Syrian government with these funds. So that sort of sets aside the funds going to other opponents of HTS. And then you look at what would HTS do with these funds, not necessarily what Fozzy Mota would do with these funds, because the reason Khrushchev was giving these funds to Fozzy Mota was to respond to the Syrian government's activities. I tried to look at the record on this and seems to me, but maybe you can help me. The only time Khrushchev appears to mention the government, the Syrian government, is in his statement to the court about seeing the human rights abuses of the Russian and Syrian government and being motivated by that. And under al-Khagighi, which adopts the Second Circuit's reasoning in Iran, seems like they're telling us the focus should be or the appropriate focus is not on what reason or motive that the defendant has, but whether or whether Khrushchev's offense, giving the money here to Fozzy Mota, was calculated or planned to achieve the object of influencing the Syrian government. I know it sounds repetitive, but how has that been established? Or is there enough for the district court to have thought that it was to infer that that has established when Fozzy Mota used some of Khrushchev's money for media work and presumably some of Khrushchev's money could have gone, I mean, we don't know, to a motorcycle or a rifle? And I guess HDS could have used the motorcycle rifle in its military defense over attacks from other terrorists or non-governmental groups. We don't know that it went for the Syrian government. So on the motorcycle, Fozzy Mota did say that the motorcycles were for mujahids. But, again, I don't want to get hung up on those particular facts because I don't think that's where your question's going. I think the best response that I can give is to contrast this case with al-Haggagi, because the interesting sort of unusual thing about al-Haggagi is, yes, he had these statements about supporting ISIS, but at the same time he had made a bunch of other statements exactly the opposite. And what the court in al-Haggagi said, particularly because it was applying the clear and convincing standard at the time, was that there wasn't sufficient evidence that al-Haggagi actually wanted ISIS to succeed in any of its efforts. He was just trying to bolster his credibility in order to be allowed to continue bothering people in these chat rooms. And this was entirely apart from ISIS's activities. The court rejected the factual finding that al-Haggagi was trying to promote ISIS or help it achieve its goals, versus here, we know that Khrushchev wanted HDS to help achieve their goals. I want to very briefly touch on Khrushchev's second and third claims while I have a little bit of time. On the government piece, I think that this can pretty simply be resolved by applying the standard statutory principle that when there's an undefined term, you apply the term's ordinary meaning. And Khrushchev doesn't dispute that principle or that the ordinary meaning definitions that we've set forth in our brief are the appropriate ones for the government. And crucial to that is recognition is not an element of any of those definitions. It's, as Judge Miller pointed out, the ability to exercise governing power over a territory. Now, there may be some more difficult hypotheticals on the edges of that definition, but for purposes of this case, the Assad regime is not one of those difficult hypotheticals. And you only have to look to Khrushchev's lead authority on this issue, the National Defense Authorization Act, where it refers to the Assad government in saying we will not recognize it. And that, I think, lends further credence to the ordinary meaning of government does not hinge on this three-factor test that Khrushchev has asked this court to adopt. And then finally, on the adequacy of the district court's explanation, I would simply point this court to the fact that we've been discussing at great length the particular statements that Khrushchev made, and that's because the district court cited those specifically as its reason for making the finding that it did. And that's why I think that there's sufficient explanation here to permit appellate review, particularly given the plain error standard that this court would apply. If the court doesn't have any further questions, I would urge the court to affirm. So there was no statement of purpose by Mr. Khrushchev with respect to the funds. The statement in the pre-sentence report that the government refers to concerns Russia, and the sentencing judge did not make findings with respect to Russia at the sentencing hearing. I think to the extent that this court maybe isn't – What do you make of the statement that he knew – well, let me just quote it. It was wrong to give him money because he was doing more than media activism. He was raising money for the wrong things. Right, so that goes to the knowledge enhancement, Your Honor. It does not go to the specific intent enhancement. The knowledge enhancement, the having reason to believe and knowing one. It does not, however, and is not a statement about Mr. Khrushchev's purpose in providing the funds. In addition, this court is absolutely correct. HDS was engaged in conflict with many other entities, including ISIS at the time, and the funds could have gone to many other purposes. We also don't have any idea where the funds went. This is an attempt case. So there's no way of kind of knowing what purpose they were sent to. Ultimately, to the extent this court has questions or is sort of uncertain about which statements matter, what findings were made, what specific conduct was being retaliated against, coerced or intimidated, I think remand to the district court for a new sentencing hearing is appropriate, and then we can generate more kind of robust factual findings. Unless there are further questions, I will rest. Thank you. Thank you very much. Mr. Fish, Mr. Chin, Mr. Minta, I appreciate your arguments here today. The case of United States v. Murat Khrushchev is now submitted. That concludes our docket for today. We are adjourned. Thank you.
judges: MURGUIA, THOMAS, MILLER